# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| RWT GROWTH INCORPORATED, a Canadian corporation, | ) ) ) |
| Plaintiff, | ) ) **COMPLAINT** |
| v. | ) ) **DEMAND FOR JURY TRIAL** ) ) Case No. |
| REV ENERGY SERVICES, LLC, a Colorado company. | ) ) ) |
| Defendant. | ) ) ) ) |

This is an action stemming from a breach of contract that entitles Plaintiff RWT Growth Incorporated (**"RWT Growth"**) to fees for rendering financial advice to and brokering favorable loan terms for Defendant Rev Energy Services, LLC **("REV Energy")**. Under the terms of the September 14, 2021 Advisory Agreement (the **"Agreement"**), REV Energy was obligated to remit a success fee equal to two percent (2%) of the gross funding amount that REV Energy "receives as a result of the work performed by RWT" Growth or "made available to REV [Energy] from qualified lenders." RWT Growth, in fact, successfully negotiated and materialized a $16.5 million loan from lender Great Rock Capital Partners Management, LLC (**"Great Rock"**), which was available to REV Energy as early as January 2022. Despite the exhaustive efforts of RWT Growth in securing this funding, REV Energy refuses to honor its obligation by paying the success fee to RWT Growth.

## THE PARTIES

1. Plaintiff RWT Growth is a corporation organized under the laws of Canada, with its principal place of business in British Columbia, Canada.

2. Defendant REV Energy is a limited-liability company organized under the laws of Colorado, with its principal place of business in Denver, Colorado.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C § 1332, as complete diversity exists between the parties and the amount in controversy exceeds $75,000, exclusive of costs and interest.

4. This Court has personal jurisdiction over the Defendant because it conducts business in the State of Colorado.

5. Venue is proper in the District of Colorado under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in and the Defendant is a resident of this District.

## FACTUAL BACKGROUND

### REV Energy Seeks Facility Funding for its Hydraulic Fracturing Business

6. REV Energy is in the business of hydraulic fracturing, a technique that deploys highly pressurized liquid to fracture deep-rock shale formations for the purpose of extracting energy sources like natural gas, oil, or geothermal energy.

7. According to its website (www.revfrac.com), REV Energy touts itself as the "industry's top performer" by "[r]evolutionizing the way we think about fraccing."

8. As a result of its high-end technologies, such as its "Tier 4-Final Engines and 3,000 HP frac pump units" requiring "40% less equipment than its competitors" and "delivering

a 30%+ reduction in repairs and maintenance while extending fleet operating life and reducing downtime," REV Energy claims it "is the leader in cost-reducing and environmentally safe technologies."

9. In furtherance of securing funding for its operations and expanding its business, REV Energy contacted RWT Growth, a boutique, full-service capital advisory firm that explores and offers innovative bespoke capital strategies to advance companies toward their financial goals.

10. Recognizing RWT Growth's well-regarded resume and strengths in brokering favorable loan terms, REV Energy retained RWT Growth to provide financial advice and gain access to capital from qualified lenders for the purpose of financing existing and additional equipment to support REV Energy's current and upcoming operations.

11. In particular, REV Energy indicated that it needed such capital to purchase equipment an upcoming partnership related to fracking services.

12. That partnership was imminent at the time REV Energy and RWT Growth entered into the Agreement in September 2021.

**REV Energy and RWT Growth Execute the Agreement**

13. REV Energy and RWT Growth executed the September 14, 2021 Agreement, a copy of which is attached as **Exhibit 1**.

14. On September 14, 2021, RWT Growth executed the Agreement, while David C. Potter, Chief Financial Officer of REV Energy, executed the Agreement on November 9, 2021 on behalf of REV Energy.

15. Under the Agreement, RWT Growth agreed to the following responsibilities:

    a. Performing financial projections and modeling as required;

  b. Preparing a financially focused lending proposal;

  c. Attempting to access financing from qualified lenders;

  d. Working with REV Energy and potential qualified lenders to ensure REV Energy is capable of obtaining debt financing as it so desires for transaction financing purposes;

  e. Representing REV Energy in discussions with qualified lenders and relevant stakeholders; and

  f. Representing REV Energy in any high-level negotiations or discussions to achieve the objectives of REV Energy.

Agreement, § 1.

  16. Significantly, REV Energy unequivocally agreed to pay RWT Growth a success fee in the event of two lending circumstances that stemmed from "the work performed by RWT" Growth: either when REV Energy received funds or when funds were "made available" to REV Energy from a qualified lender. Agreement, § 3(a).

  17. In either of those two events, REV Energy agreed to pay a success fee to RWT Growth equivalent to two percent (2%) of the gross funding amount. Agreement, §§ 3(a), 5(b).

  18. Of import, REV Energy promised not to circumvent the Agreement "in an effort to avoid paying" the success fee. Agreement, § 11.

  19. In other words, its cost-saving reputation notwithstanding, REV Energy could not bilk RWT Growth of its entitlement to the success fee in the event REV Energy had access to a loan even if REV Energy later had a change of heart in using the loan.

20.     It is precisely that scenario that underscored the importance of the "made available" condition that triggered REV Energy's obligation to pay the success fee under the terms of the Agreement.

**RWT Growth Brokers Facility Loan from Great Rock for REV Energy's Benefit**

21.     In conformance with its duties under the Agreement, RWT Growth secured financing for REV Energy's benefit.

22.     In particular, RWT successfully negotiated a relationship between REV Energy and Great Rock.

23.     In advance of providing funding options for REV Energy, Great Rock required an appraisal of REV Energy's equipment to assess the type of collateral available to secure the financing.

24.     Great Rock retained Range Valuation Services to perform the appraisal of REV Energy's equipment in November 2021 (the **"Appraisal"**).

25.     Under the terms of the Appraisal, only Great Rock had the exclusive right to use the Appraisal, a condition that REV Energy was and remains aware of.

26.     In other words, REV Energy has no right to assign the Appraisal to other lenders for their consideration in assessing and underwriting funding options.

27.     On November 2, 2021, Great Rock provided a term sheet outlining a $20 million senior security credit facility loan to REV Energy (the **"Term Sheet"**), a copy of which is attached as **Exhibit 2**.

28.     As identified in the Term Sheet, Great Rock offered a revolving credit facility loan in the amount of up to five million dollars ($5 million) (the **"Revolver"**), a term loan facility in the amount of up to nine million dollars ($9 million) (the **"Term Loan"**), and a

5

delayed draw term loan facility in the amount of up to six million dollars ($6 million) (the **"Delayed Draw Term Loan"**) (collectively, the **"Facility"**).  Term Sheet at 1.

29. The Term Sheet further identified the maturity date, the closing fees and costs, and the interest rates for each component of the Facility, along with the collateral securing the Facility.  Term Sheet at 1–5.

30. REV Energy accepted the Term Sheet upon the execution of the Term Sheet by David Potter, CFO of REV Energy, and the remittance by REV Energy of a good-faith deposit of seventy-five thousand dollars ($75,000) to Great Rock.

31. By executing the Term Sheet, REV Energy understood that Great Rock would make funds available for the purpose of assisting with the purchase of new machinery and equipment, paying transaction fees and expenses, refinancing existing debt, and financing the ongoing general corporate needs of REV Energy.  Term Sheet at 2.

**Great Rock Makes Available $16.5 Million Facility to REV Energy**

32. On January 18, 2022, after conferring with REV Energy on the structure of the Facility, Great Rock expressed to REV Energy that a $16.5 million Facility had been "approved by our investment committee."

33. That Facility was composed of a $7.5 million Revolver, $7 million Term Loan, and a $2 million Delayed Draw Term Loan.

34. The only condition of this new Facility was the execution of a contract between REV Energy and a hydrocarbon exploration and production company.

35. Indeed, REV Energy confirmed on February 15, 2022 that it had indeed "just executed the . . . contract" with the company.

6

36. Five days prior to this admission, Great Rock again confirmed it had "approved the $16.5 MM facility and remains committed to closing it."

37. In other words, as understood by the terms of the Agreement and through the brokering of RWT Growth's negotiations, RWT Growth had "made available to REV ENERGY" the funds from a qualified lender. Agreement, § 3(a).

38. The funds "made available" to REV Energy were the $16.5 million from Great Rock as of January 2021.

39. Consequently, once those funds were "made available," the Agreement mandated that REV Energy remit a success fee of $330,000 to RWT Growth, *i.e.*, 2% of the $16.5 million Facility made available to REV Energy.

### REV Energy Refuses to Abide by the Agreement

40. In spite of the clear language of the Agreement, REV Energy refuses to remit the success fee to RWT Growth.

41. RWT Growth has made several unsuccessful overtures to REV Energy in seeking its success fee, all to no avail.

42. On April 1, 2022, RWT Growth forwarded a March 29, 2022 invoice to REV Energy, requesting the payment of the success fee, a copy of which is attached as **Exhibit 3**.

43. On April 8, 2022, with no response from REV Energy, RWT Growth retained counsel to make a further demand of $330,000 on REV Energy under the express terms of the Agreement, a copy of which is attached as **Exhibit 4**.

44. Now, somehow, even though the terms of the Agreement could not be clearer, REV Energy takes the extraordinary position that RWT Growth's requests for its success fee are "harassing and vexatious."

45. Despite RWT Growth's best efforts and the commercially reasonable negotiations between RWT Growth and Great Rock over the span of many months, REV Energy has blatantly ignored the Agreement and taken the remarkable position that, by not closing on the Facility, it is under no obligation to reward RWT Growth for its exhaustive negotiations on REV Energy's behalf.

46. Under REV Energy's position and perhaps in conformance with its reputation to reduce costs, it can string along business partners for many months, convincing them to perform extraordinary tasks *gratis* under the false pretense that it will pay their business partners, only to pull the rug out from under these partners by deliberately avoiding requests for payment.

47. To make matters worse, REV Energy is now seeking to undermine the exclusivity of Great Rock's use of the Appraisal.

48. Rather than abiding by the terms of the Agreement by paying RWT Growth its success fee, REV Energy now feels entitled to take advantage of the work performed by REV Energy and to circumvent the Agreement by relying on the work product of RWT Growth and Great Rock without any due consideration.

49. Indeed, on April 19, 2022, David Potter, CFO of REV Energy—after he had attempted to obtain permission from Range Valuation Services to share the Appraisal with other lenders—requested that Great Rock release its exclusive use of the Appraisal so that REV Energy could forward the Appraisal "with . . . other potential parties."

50. No surprise, REV Energy offered no compensation to Great Rock for the release of the Appraisal.

## COUNT I
### Breach of Contract

51. RWT Growth incorporates by reference paragraphs 1 through 50 as though fully set forth herein.

52. RWT Growth and REV Energy entered into the Agreement whereby RWT Growth agreed to, *inter alia*, provide financial advisory services and broker funding options for REV Energy from qualified lenders.

53. Once funding was made available to REV Energy, RWT Growth was entitled to a success fee equal to two percent (2%) of the gross funding amount.

54. In January 2021, RWT Growth secured funding from Great Rock in the form of the $16.5 million Facility made available to REV Energy.

55. Once REV Energy executed its contract with the hydrocarbon exploration and production company, there was no other condition inhibiting REV Energy's access to the $16.5 million Facility.

56. RWT Growth's clear entitlement to a success fee notwithstanding—by virtue of the $16.5 million Facility made available to REV Energy—REV Energy refuses to abide by the Agreement by remitting the $330,000 success fee to RWT Growth.

57. Based on the foregoing, REV Energy is in material breach of the Agreement.

58. REV Energy is in further breach of the Agreement by circumventing its obligations by failing to appropriately compensate RWT Growth but also seeking of Great Rock's exclusive use of the Appraisal so that REV Energy can explore other funding options.

59. As a consequence of REV Energy's breach of the Agreement, RWT Growth has been damaged in the amount of the success fee and the loss of revenue by retaining counsel to protect and enforce its contractual rights and entitlements.

9

## COUNT II
### Quantum Meruit/Unjust Enrichment

60. RWT Growth incorporates by reference paragraphs 1–12, 16–17, 19–50 as though fully set forth herein.

61. RWT Growth conferred a benefit on REV Energy by virtue of its financial and creative capital strategies services, including brokering the $16.5 million Facility made available to REV Energy.

62. REV Energy was aware of, appreciated, and acquiesced in the benefit conferred on it.

63. The benefit conferred on REV Energy was accepted under circumstances making it inequitable for the benefit to be retained by REV Energy without compensation to RWT Growth of its value.

64. REV Energy is liable to RWT Growth for the value of the financial and creative capital strategies services provided, which value equals to the success fee and the loss of revenue, including, but not limited to, attorney's fees, expenses, and costs incurred by RWT Growth in seeking collection of the success fee and instituting this action.

## COUNT III
### Promissory Estoppel

65. RWT Growth incorporates by reference paragraphs 1–12, 16–17, 19–50 as though fully set forth herein.

66. REV Energy made a promise to compensate RWT Growth for its financial and creative capital strategies services.

LEGAL\57600173\4

67.     REV Energy reasonably should have expected that that promise would induce RWT Growth to engage in negotiations with lenders like Great Rock to broker financial options for REV Energy's benefit.

68.     Indeed, RWT Growth reasonably and detrimentally relied on REV Energy's promise in moving forward with its exhaustive negotiations with Great Rock over a span of several months.

69.     Through the negotiations, RWT Growth successfully brokered the $16.5 million for REV Energy's benefit, yet REV Energy refuses to compensate RWT Growth for inducing RWT Growth's actions.

70.     A judgment in favor of RWT Growth against REV Energy is necessary to prevent the foregoing injustice.

## **PRAYER FOR RELIEF**

WHEREFORE, RWT Growth Incorporated respectfully prays that:

1.      Judgment be entered finding REV Energy is in material breach of the Agreement or alternatively that REV Energy engaged in unjust enrichment and/or REV Energy must be estopped to prevent in the foregoing injustice;

2.      Judgment be entered in favor of Plaintiff for damages in an amount to be proven at trial, including, but not limited to, compensatory, incidental, and consequential damages;

3.      This Court order REV Energy to pay the Plaintiff's costs, expenses, disbursements, and attorney's fees herein;

4.      That Defendant pays prejudgment and post-judgment interest at the highest rate allowable by law and all costs of Court; and

11

5.  REV Energy is awarded such other and additional relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff RWT Growth Incorporated demands a trial by jury of all issues so triable.

DATED this 25th day of April, 2022.

Respectfully submitted,

COZEN O'CONNOR

/s/ *Christopher Clemenson*
Andrew Hepworth
Cozen O'Connor
707 17th Street, Suite 3100
Denver, CO  80202
Tel: (720) 479-3894
Fax: (866) 206-6096
CClemenson@cozen.com

Attorneys for Plaintiff
RWT Growth Incorporated

LEGAL\57600173\4